Next case, come on down. Next case, come on down. Syed Khalil and others v. Mark J. Hazuda, the Director of the U.S. Citizenship and Immigration Services, etc. And first we hear from Mr. White. Yes. Good morning, Your Honor. May it please the Court. On October 17, 2000, Public Law 106-313 added a subsection J to 8 U.S.C. 1154, which said that an employment-based first, second, or third preference immigrant petition for an individual whose application for adjustment of status has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or similar occupational classification as the job for which the petition was filed. In this case, this provision provides the purpose of this law is ameliorative to provide job flexibility for long-delayed adjustment applicants. This positive statement necessarily implicates the otherwise complete power of the Immigration Service to revoke petitions because a petition can only be valid after it has been approved for porting purposes. Until it's approved, therefore, one has a valid petition, one moves to another job. Ergo, you wish to challenge that, the way to challenge it is by revocation. This imposes a constraint on the power of the government to revoke it for that reason, a very narrow set of reasons. The government's opinion here or their reading of the statute would seem to say that because you have 1154J, which gives this thing that says the petition shall remain valid when one transfers to a new job, is different than in section 1155, which is the power to revoke, which is a little bit like saying that in a way what's in the green box does not affect what's in the red box, but I would say, we plaintiffs would say, that what is in that green box, 1154J, it depends on what that power is. That power, in this case, is that the petition shall remain valid, which affects the ability to revoke for the narrow reason that someone has gotten a new job with a different employer in the same or similar occupational classification. It does not involve revocations of petitions, which can happen and which can be proper, for other reasons. For example, the person does not establish that they have, that the petition was approved in error. Oh, for example, the individual does not have the required bachelor's degree or master's degree. The beneficiary does not have the required experience that's set forth under the terms of the labor certification, et cetera, et cetera. Oh, the employer does not have the ability to pay. But Congress clearly was concerned about the situation of, well, these things last a long time, and we don't want to freeze the applicant or the, with this a particular employer, when he can get a job with another employer doing the same or similar thing, and that's okay. So if we're in a situation where the government's reading is adopted, there is no job flexibility with regard to transferring positions, because, in effect, it would say, well, you have flexibility and the petition remains valid until it doesn't. And that's not flexibility. That's not, that's not job flexibility at all. So if someone whose adjustment has been denied and 20 years later finds an employer who is going to give him a job, that's okay, even though there's been 20 years that has passed? Well, suppose that someone, the adjustment is denied. I mean, there's going to be, you know, a series of issues that would come up in the 20-year, in the 20-year case that you cite. For example, it says that in, that immigrant petitions, you have to show that there is a continuing ability of the sponsor to pay for the offered wage. And if you have a situation where 20 years have gone by, then Company A maybe is out of the picture, but then Company B is in the picture. You have to show that during those 20 years, either A or B maintained the ability to pay the offered wage. I mean, it can't be just, it's grounded in various restrictions. Yes? They denied the application. So at the time that he came back with a new job, it had been denied. It was now adjudicated. It was adjudicated, but the basis for the denial was that he was unlawfully employed for a period of time. Yes, that's right. That's a legitimate basis to deny it. Sure, that's a legitimate basis to deny the application for adjustment of status, and that's not what we're contesting. What we're contesting is the revocation of the I-140, the immigrant petition. That immigrant petition, and that I-140 was revoked because he had a new job offer. Well, that's doing exactly what the law says you can't do. The law says that I-140 shall remain valid. And to the extent that the court has a concern about whether or not this 1154J can apply within the context of the immigrant visa process, it can because you simply have to meet the predicate. The predicate is that you had an application for adjustment of status that was filed and remained pending for 180 days or more. Well, if one has an adjustment of status application, which was, for example, denied on the 181st day, it will always remain true that the application for adjustment of status was filed and remained unadjudicated for 180 days. So the predicate is met, even within the context of consular processing. Now, the problem is, I mean, and so we're not questioning the adjustment of status denial. What we're questioning is the revocation of the I-140 because he had a new job offer with an employer doing the same or similar thing as the old employer. And that's what 204J, that's what 1154J is designed to permit. Why not apply a new? Now there's a new employer. The others in the past, I have now a new employer. Why are you saying five, six years later, it's the same application is still open? Well, would it be more practical to reapply now that you have a new employer? And say it goes back to the original one and that employer is no longer around and I stayed working and... You can do that, but that has practical problems. First of all, this process occurred back in 2012, OK? Obviously, the appeal time has made it different. The second is, he has three older children. And under the laws of the Child Status Protection Act, with an application that was filed, an I-140 that was filed and approved in the year 2006, those older children can immigrate with him to the United States. On the other hand, if he refiles, yes, assuming that he goes through the labour certification process and everything else with the new employer, ChemQuest International, then sure, he and his wife will be able to come to the United States, but his children are going to stay behind in India. And he has a daughter who's in the process of becoming an American citizen. When she does become an American citizen, she can turn around and file for her brothers and sisters, but it takes 13 years before they'll be able to come. So there is a huge disincentive on the part of, you know, the plaintiff, Mr Khalil, to have to go through a new employer, realising that it causes a family separation for 13 years. Are these adult children? How old would they be? Yes, they're now over 21, which is why they're out of the loop. I mean, they're like in their early 20s, I believe. But they all would have qualified and do qualify, actually, under the petition that was filed by Herbal Pharma, and which, under the law, can be transferred to ChemQuest International. So there is... I noticed that in the district court's, you know, opinion, they did say, for example, well, the question here was, you know, Congress amended 1155 in the year 2004, and if for some reason they had wanted to make clear that the power, the positive congressional statement put forth in 1154J also affected 1155, which I think necessarily it must, they said, well, Congress could have made something, an explicit statement about that. Of course, when we look at what the law changed in the year 2004 actually said, it was a law, it's public law 108458. This is a law which, in the government printing office, is 236 pages long. There were two pages, two pages out of 236, that were related to a section called visa requirements. In the visa requirements section, it said that consular officers processing visas abroad, at embassies abroad, can revoke visas already issued without notice to the visa holder. And also, it went on to say, this is where it amended 1155, that they can, that where the visa holder has already proceeded to travel to the United States with the immigrant visa that he has in his hand, they can revoke the petition without giving advance notice to the visa holder. But this is a very, this is, what we can see here is what Congress was trying to do in this section was to say that they wanted to make it easier for people who already had, they wanted to make it easier to revoke visas where people already had them in hand and were traveling to the United States or already had the visa stamp in their passport. That is a completely different animal than the kind of situation which we're dealing with in 1154J, where you have an approved visa petition. Here, in the approved visa petition, so in effect, but the problem ultimately with this kind of an argument, what Congress would have done and could have done is that it's speculative. And in the end, what we have is the clear congressional statement that I think we have to give opinion to, that we have to give weight to, which is to say that that petition shall remain valid. Well, necessarily, this is a very narrow carve out to the discretionary authority and the complete authority to revoke petitions. And that's something which makes sense from a policy viewpoint as well as from a linguistic and language sense in the statute itself. The district court did cite a few opinions, but just by way of example. For example, D'Souza v. Napolitano, Punitil v. Hightower. So in D'Souza v. Napolitano, this involved the district court decision where there was a revocation of an I-140 immigrant petition on the grounds that there was insufficient proof that the labor certification procedures were properly filed. Again, this is the kind of case which, like all of the others, has no relevance to this case at bar because the I-140 was not revoked for the prohibited reason, which is only, which is simply that you got a new job with this doing in the same occupational classification. And that was not, that's, so therefore, it's irrelevant. The same defect happens with these other cases, Punitil v. Hightower. It involved the revocation of an I-140 based on lack of evidence that the beneficiary had the required bachelor's degree and that the petitioning employer, MSU Software, did not have the ability to pay. Again, this revocation does not involve or implicate the revocation in the case at bar, which was for the prohibited reason. Of course, the government can revoke if the person doesn't have a proper bachelor's degree or a proper ability to prove that he has the required experience. That applies to any case. So if we were to send it back, statute applies, it's, he's reconsidered, and he's still denied, would, could there still be an appeal? If he's reconsidered, and the reconsideration is that there is a, that the court has, in this narrow circumstance, has subject matter jurisdiction. And the reason he's denied is only because of the fact that he has a new job offer in the same or similar classification, yes, a new appeal would work. However, if the denial is based on something else, some other defect with the I-140, then that revocation stands and there is no subject matter jurisdiction. But in this case, you know, it was denied for this reason, which is the prohibited reason. And, and, but yes, there, there are many ways in which this case could be lost by the plaintiff. But that's, but not this one. And, and same, same with all of these other cases as well. I think I'm at the end of my time. Thank you, Mr. White. Yeah, thank you, too. Shall I begin, Your Honor? Yes, sir. Yes, Your Honors, counsel, may it please the court. My name is Adam Goldman, and I represent the federal defendants in this matter. Your Honors, we ask that this court affirm the decision of the district court and rule that there is no jurisdiction to review an 8 United States Code 1155 visa petition revocation pursuant to 8 United States Code 1252A2B2 because such a matter is within the discretionary decision of the Secretary of the Home, of Homeland Security. We believe the two strongest cases on this point, Your Honors, are Kukana and Ghanem. Ghanem is a court, decision of this court. We submitted it as directly on point. It noted that. It predated the, the amendment, right? The 2000 amendment? If I may have a moment, Your Honor. Just for the exact date. Ghanem was decided in 2007, Your Honor, so no, it did not. So, Ghanem was decided afterwards, and that court, as well as every other circuit court that handled this matter, except for the Ninth Circuit, has all stated that the, the language in 1155 gives sole discretion to the Secretary of the Department of Homeland Security. Have they addressed these circumstances? And I thought we had said in other situations where the, the Secretary has no discretion that that jurisdiction stripping provision does not apply. Well, that I think is where Kukana comes in, Your Honor. Kukana dealt with an issue where the government argued that it should be assumed or contemplated that a regulation, not a statute, gave the secretary discretion. And Kukana stated that no, it must be a decision specifically stated by statute as discretionary, and the reason that is important, Your Honor, is that that is what we have here. Well, but it sounds like, when you read J, it doesn't seem like there's any discretion, it says the application shall remain valid with respect to a new job. Now, where's the, where does the secretary have discretion to do anything other than allow the application to remain pending? Your Honor, we would submit that that's, that similar language to that is found actually all over 1154, 1154B states that it must be approved, has similar, you know, language, and moreover, Your Honor, 1154J is not carved out in the 1155 language. It refers to any petition under 1154. It does not separate. More importantly, Your Honor, 1154J is not as expansive as counsel has submitted. First, it only applies to adjustment of status applications, and I think as Justice Brotto stated, it does not apply to this case in any event, where not only is there no adjustment of status application pending, but the matter came before CIS three years afterwards. What happened in this case, Your Honor, which is different than other cases, is that in 2011, the adjustment of status application was denied. The primary plaintiff then went back to India, and in 2014, was stated that he was going to receive a notice of intent to revoke the visa petition, the reason being that there was no position as described in the I-140 available. It was only in response to that notice that the plaintiff, the head plaintiff now stated that he had this new position, and he provided two identically worded letters. Both were one page, and both have identical language. One dated March 4, 2014, and one dated April 10, 2012, from the new company stating they had a job for him. So this was not a situation in which this job was available while this whole matter was going on. The agency first became aware of this in response to the notice of intent to revoke three years later. Regarding 1154J, Your Honor, we believe that an important case . . . When they gave him notice of intent to revoke, he went and said, I've got a new job offer. And that was in 2014, Your Honor. So this was three years after the adjustment of status was already denied, and 1154J specifically states that it applies to adjustment of status applications. Indeed, Herrera, the case by the Ninth Circuit in which they found that there was jurisdiction, unlike this court in Ghanem, in that case, Your Honor, they explained that 1154 has no bearing whatsoever on 1155J. Just because something remains valid does not mean that it cannot be revoked. Rather, the opposite is true, Your Honor. A valid visa petition, by definition, can be revoked, which is how 1154 and 1155 come into play. So any petition filed under 1154 that is valid can be revoked under 1155 pursuant to the discretion of the Secretary. More importantly, Your Honor, I think Sung, a case cited by counsel of this court, of Fifth Circuit Court, explains that 1154J only applies to adjustment of status cases. In that case, Your Honor, us, the government, we argued that an immigration judge, and later this court, in a petition for review, would have no jurisdiction over an 1154J determination. This court reversed us and explained that the purpose of 1154 is for the application for adjustment of status, therefore, an immigration judge can review such a matter. Thus, we would submit that Sung, as well as the language in Herrera, as well as the District Court's decision, explained that the portability language does not mean that it remains valid forever and does not make it barred from any sort of revocation under 1155. Indeed, Herrera uses the term that it only remains valid, and they stated, with respect to the new job. So there's a very important limiting factor to 1154J, Judge Owen, which is that stating that it remains valid only means that, regarding that there is a new job, it remains valid, and again, in connection with the adjustment of status. So therefore, Your Honors, we would submit that the idea that the 1155 revocation and the discretion granted to the Secretary is by no means limited by an 1154J determination. Furthermore, Your Honors, we would submit that all the cases that were cited in this case actually state for the same thing. Every single case cited all state that in very serious circumstances, regardless of the facts, the 1155 revocation is still a discretionary matter for the Secretary. I think a very important one, Your Honors, is the Holy Virgin case, the Holy Virgin Church case from the Seventh Circuit. The reason that is important, Your Honor, is that the plaintiff in that case stated there was an actual constitutional problem with the revocation. And even when there was a constitutional problem, the Seventh Circuit explained that even though you're making a constitutional claim, because a revocation is given to the discretion of the Secretary of DHS, there is no jurisdiction under 1252A2B2. Of course, the one exception for constitutional claims and claims of law regarding adjustment of status applications is found in 1252A2D, but as this Court is well aware, that only applies when there is a petition for review and a removal proceeding, and that's when that portion comes into play. So therefore, Your Honors, we would submit that the entire decision here is correct, and we do believe that the facts are important here in that the adjustment of status was denied on October 7, 2011. That is not being challenged. That has never been challenged in this case, and indeed, on pages 291 to 292, it's stated in the record that that's not being challenged. Furthermore, regarding the attempt to rely on internal office memos or the memorandum, field manuals, and cables, we believe that it's well settled, predominantly the Harvey case by this Court, that those sorts of things, memos, do not create any sort of binding law or give any sort of rights to a plaintiff. Moreover, Your Honor, regarding the adjustment of status, we would note that on page 18 of the record, the plaintiffs admit that they had no lawful status, that the adjustment was proper, the adjustment denial was proper. So what we have here, Your Honor, is a very proper adjustment of status denial. We then have visa consular processing applications that are sought in 2012 and 2013. Those are denied, and as, again, conceded in the record by plaintiff, that is not subject to review due to the doctrine of consular non-reviewability, particularly Centeno, the case from this Court. And then in 2014, long after this happens, that's the first time the notice of intent to revoke is provided, and only at that point are two letters that are, again, identically worded, provided, stating that there is now this new job out there. But this is long after the adjustment is done, and this would lead to the problem that I believe Judge Prado pointed out, which is that this would allow people 20 years down the road to do the same thing. If a notice of intent to revoke is provided 20 years later, the person can then say, wait, I have this job, so therefore, because I applied for an adjustment of status, and more than 180 days passed since it was denied 20 years ago, I still have a little sort of caveat to challenge an 1155 revocation. Can you give me the statutory link between revocation of denial of adjustment of status and the ability in the application? Yes, Your Honor. There are two ways. Adjustment of status refers to a way that someone that is present. Why are they linked? I mean, I hear you saying that if you're denied adjustment of status, you cannot apply for a visa. If I can correct, Your Honor, if you are denied adjustment of status, you can still consular process from your home country. The issue I was trying to bring up, and artfully, I admit, was that once a consular processing visa application for a green card or lawful permanent resident status is filed, if that is denied, what's called the Doctrine of Consular Non-Reviewability, Centeno v. Schultz is the primary case from this court, explains that that cannot be challenged in any sort of court due to that doctrine. It can't be challenged, but that doesn't mean that if you've got a pending, I forget the numbers, but a pending application to have a job in America, that could still be granted, right? The person can consular process pursuant to the job here, yes, Your Honor. So I'm, where is the statutory link that says if you are denied an adjustment of status that this provision in 1154J does not apply to you? Your Honor, we would submit that's in the language of 1154J itself, and also the Herrera decision. 1154J refers to an individual whose application for adjustment of status has been filed and remains unadjudicated for 180 days or more, and then in Herrera, which although jurisdictionally disagrees with this Court on the overall 1155 issue, states that the portability provision is very clear, and that it only applies to adjustment of statuses with respect to the new job, and that it does not relate at all to 1155. So that is where the link comes in, Your Honor, is regarding, in Herrera where it explains the link between 1154J and 1155, and the link between an adjustment and 1154J is in the 1154J itself, but also this Court's Sung decision, which stated specifically that the purpose of 1154J is for an application for adjustment of status. So we would submit that all of those taken together, Herrera, Sung, 1255, which is the adjustment of status petition or statute, 1155, and 1154J, all taken together establish that dynamic. Finally, Your Honor, we would note that every case cited in both briefs has never found, other than the Ninth Circuit, that there is any jurisdiction for any reason when there is an 1155 revocation. Currapati was the only case that came close, and all that said is that when the regulations for notice were not followed, and that there is a standing issue, that was remanded just for a standing issue, because if the business is out of business and the visa revocation is sent to the company that no longer exists, you can't say that the beneficiary has no interest in the case, therefore they can't bring the case. So that's what all Currapati was about, was a standing issue. And in this case, we're not contesting that Mr. Khalil does not have standing, just that there's no jurisdiction altogether. Although I have plenty of time left, I have nothing further to prepare, so if there are no further questions, we would ask that this Court affirm the decision of the District Court. Thank you. So in reply, a couple of things to clarify. You know, Ghanem v. Upchurch was a case that involved an I-130 immigrant petition based on a family relationship where there was an allegation that there was a fraud in the marriage relationship. In other words, the marriage was not a bona fide marriage entered into for the purpose of love and a life together, but rather instead a sham marriage. Of course, you know, anything to do with family petitions does not implicate the 1154J rule, which only applies to employment-based immigrant petitions. The question I asked you off the bat, it does say that an individual whose application for adjustment of status has been filed to remain unadjudicated for 180 days or more. Well, it did remain unadjudicated for 180 days or more, but it was denied. Yeah, yeah, yeah, that's true. The adjustment of status was denied, but remember, this language does not say the adjustment of status still has to be pending. It just says that the adjustment of status had to have been remained unadjudicated. That makes no sense to me. Okay. But remember, there's two ways to get green cards to the United States, I mean, procedurally speaking. One is adjustment of status. You're inside the United States. Why was it denied that? And so why does this provision apply to anybody whose adjustments, why he was denied that? Because it's not actually restricted, okay? It's not so restricted. In other words, it would be an assumption to say that that application for adjustment of status needs to still be pending. It says a petition whose application for adjustment of status. That means anybody that's ever filed one and the government didn't get around to denying it until the 185th day or 200th day, even if it's denied, their application, as Judge Prado keeps pointing out. Well, they can move to another employer, and if it's in the same or similar category, that job remains valid. Yes, it does. But, of course, there can be many other reasons why applications can be denied, and we're not... I mean, petitions. Go ahead. I'm sorry. I'll let you make your argument. Okay. Okay. Well, what we're saying here is that if you look at this, the language of the statute does not say that the application for adjustment of status must still be pending, okay, at the time. Now, it may be that the drafters have been assuming that that's the most likely case. No doubt it is, okay, but that is not the exclusive case. You had an application for adjustment of status. It was denied after pending for 180 days. The person ports to a new employer and chooses, for whatever reason, to go to visa processing in his home country, and he's got a job with a new employer doing the same or similar thing as before. That person also is protected, because it's not... This is... It has been filed and remained unadjudicated for 180 days or more, shall remain valid. 180 days or more means that it's... That case is still... It's still there. So, I mean, that will always be true, even after it's been denied. It has remained unadjudicated for 180 days or more. It did. It did. It's still true. What do you think the fact that it was denied before he changed employers has to do with this? Oh, I think that that doesn't... I think that... I think that the application for adjustment of status is not... It's not a change here that affects exactly when the new job offer has to come. Now, there can be a tax made upon the I-140 for other purposes. What I mean by that is, you know, normally, when it works in the case of the immigration service, OK, in a kind of administrative level, they get to the point where they want to make a decision, and they say, OK, show us your new job letter, and the person shows the new job letter. They have to show the new job letter at that moment, but there's nothing in the regulation or in the statute that says the job offer letter needs to come before a certain date. Of course, the underlying petition has to have its validity during all of that period of time. So, for example, if the petition was revoked prior to obtaining the new job letter, that would probably be a problem. Well, isn't that the same as being denied? No, no. The adjustment of status is just simply the process of getting a green card inside the United States. It's not the process of the offer of employment. The offer of employment is through this I-140, through this immigrant petition, and the adjustment of status is looking at a different set of factors. It says, have you been a status violator, do you have criminal background, do you have a contagious disease? In other words, it's focused on the alien in terms of his disqualifications to adjust status in the United States as opposed to doing a process overseas. But it's the I-140 itself which has to do with the offer of the, which has to do with the offer of employment, and that, obviously, there has to be an offer of employment that's maintained up until the time, you know, of course, if the I-140 is revoked or withdrawn prior to the time that a person gets a new job offer, I would say that's a problem. But the timing of the adjustment of status is relatively irrelevant. What's relevant is the new job offer and the revocation point of the I-140. If it's before the revocation point of the I-140, then that's an immigrant petition, which is still good. Oops. I'm at the end of my time. The status before the Court has expired. Yes, I have. I concede it. Okay. Thank you very much. Thank you. Thank you very much. We'll take a short break.